STEWART, Appellant, v. SCIACCALUGA

(December 13, 1926. Opinion and Decree.)
(January 3, 1927. Rehearing Refused.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Sales—Par. 217, 218, 219.**

When a heater of a particular name and quality has been sold and delivered by a merchant without any special warranty, the price is due, though it fails to answer the purpose intended by the purchaser.

Appeal from First City Court. Hon. Wm. V. Seeber, Judge.

Action by Samuel B. Stewart against G. Sciaccaluga.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Louis E. Jung, of New Orleans, attorney for plaintiff, appellant.

A. B. Leopold, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. This is a suit for the price of a "No. 4 Estate Heatrola heater" and connections sold and delivered by plaintiff to defendant at his residence No. 2701 De Soto street.

For answer the defendant admitted that he purchased the heater but denied that there was anything due thereon for the following reason: "That it was agreed that the heater was to be satisfactory to respondent and give the required temperature in order to heat the bedrooms of respondent's residence properly and in a complete manner, but that, on the contrary, after several tests were made it was discovered that the said heater failed to circulate the heat properly, so that the necessary temperature could be had in order to give the required heat in accordance with said verbal understanding. That the heater is of no value to your respondent, and he has on various occasions offered to return the same to the plaintiff and pay him a reasonable amount that he may have incurred for installation of the same."

There was judgment in favor of the defendant "dismissing the suit as in case of nonsuit", and the plaintiff has appealed.

In this court the plaintiff has prayed that the judgment be amended into an absolute judgment for the defendant.

Concerning the agreement alleged in the answer the plaintiff testified:

"I made no guarantee at all except to tell them it would heat in the usual way because I told them in a general way it would heat the house."

The defendant said:

"Q. Are you still willing to carry out the allegation you made in your answer; you are willing to pay Mr. Stewart a reasonable amount he may have incurred in installing the heater?
"A. The full amount as I agreed if the heater did not meet with my approval."

There is no evidence that it was stipulated that the heater would give any particular amount of heat. On the contrary, the defendant was asked:

"Q. Mr. Stewart did not warrant you any particular temperature?
"A. No, not that I know of."

The plaintiff being asked whether the defendant had made an offer to return the

stove and to reimburse the cost of installation expenses answered: "No".

Upon the question of the amount of heat thrown out by the heater the evidence is conflicting, but preponderates largely by the physical facts and by the testimony in favor of the plaintiff.

Defendant's house is thus described by plaintiff:

"There is a long room, built in between two old houses; it is four rooms connected and then four small rooms in the back and a space. One large room I measured is 26x9 feet. That is a very long room; that is what they tell me was the main room where they live, etc."

The heater was put into that "large room", at the plaintiff's suggestion. He has been in the heating business for thirty years and twenty-seven years for himself.

"Q. During that time have you handled heaters of that kind?
"A. Sold a whole lot of them."

M. J. Magruder, employed by plaintiff, handles and installs heaters; that is all he does; he made two tests of the heater; the first test was useless because there was no damper in the flue; he fired the heater for a couple of hours and placed thermometers in the different rooms and made readings every half hour; Miss Sciaccaluga was present, and the defendant came in afterwards and read the thermometers; the temperature of the room in which the heater was rose to 81 degrees; the others varied from 70 up; the only room in which the temperature was below 70 degrees was the front bedroom in which the transom was closed; Miss Sciaccaluga told him that it made her father sick to have the transom open and she refused to have it opened; in that room he could not get more than 68 degrees with the transom closed.

Wm. B. McEnanry is a plumber employed by plaintiff; his business is installing heaters; he was present when Magruder made the tests; it seemed to him the place was warm enough at that time; the fire was very hot.

The only witness for the defendant was Sciaccaluga himself. He testified that there were only 64 degrees in his bedroom and that he required 70 degrees; and only 64 degrees in the other bedrooms; he admitted that the price of the heater was $175 and $25 for installation. His only objection was that there was not sufficient heat. He said:

"I feel I could get the same results from an ordinary stove."

A heater or a stove speaks for itself. When a fire is built within it, it is bound to emit heat as a physical fact. There cannot be any complaint, and there was none, that the heater did not heat the sitting room, 26x9. With open doors, the adjoining rooms must, of necessity, also have been heated. If the defendant's front room was not heated it was because the transom, and perhaps the door, was closed. While the defendant testified that he wanted 70 degrees, his daughter testified that her father would not have the transom opened because it made him sick to sleep in a warm room. Plaintiff's claim cannot be rejected upon the sole testimony of the father contradicted by two experienced witnesses and by the inherent nature of a heater. If it was true that the heater gave out no heat he should have had other disinterested witnesses to corroborate him. The trial judge had but little confidence in the correctness of his judgment, as he gave only a judgment of nonsuit.

The plaintiff is not a manufacturer but a dealer in "Heatrola" heaters.

In the case of Dreyfus vs. Lourd, 111 La. 21, 35 South. 369, the court thus states the facts and the law:

"Plaintiff is a merchant. He undertook to deliver to defendants certain pumps, described by manufacturer's name, and a certain engine of specified horsepower, but not otherwise described than that they would be vertical, also certain minor articles. He bought these things from the manufacturers of them, and delivered them to defendants.

"They were properly constructed and of proper materials and had no inherent defects. Defendant accepted them, and set them up. They failed to perform satisfactorily the work for which they were purchased, the pumping of water for the irrigation of rice fields. The trouble is attributed by the defendants to the weakness or insufficiency of horsepower of the engines, and to the unsuitability of the gearing for transmitting the power from the engine to the pumps; and it is attributed by plaintiff to the insufficiency of water supply in the wells.

"Let the cause of the trouble have been what it may, plaintiff was not responsible for it. He furnished articles of the kind and quality called for by his contract, and his warranty went no further."

Barclay vs. Conrad, 7 La. 261, 35 Cyc. 401.

Cyc. Vo. Sales, p. 408:

"On a sale of machinery there is in general an implied warranty that the machine is reasonably adapted to the purpose for which it is purchased. There is, moreover, no warranty that a machine designed for a general use is suitable for a particular purpose or use, or that a known and designated machine purchased by name will serve a specific purpose."

We are therefore of opinion that the defendant has failed to make out his case and that the plaintiff is entitled to judgment.

It is therefore ordered that the judgment appealed from be reversed and set aside, and it is now ordered that there be judgment condemning the defendant, G. Sciaccaluga, to pay to the plaintiff, Samuel B. Stewart, two hundred dollars with five per cent per annum interest from March 4, 1926, till paid, and all costs of these proceedings.